Robert W. Pashby v. Commissioner.
Pashby v. Commissioner
Docket No. 723-65.
United States Tax Court
T.C. Memo 1966-132; 1966 Tax Ct. Memo LEXIS 151; 25 T.C.M. (CCH) 667; T.C.M. (RIA) 66132; June 17, 1966
*151 Albert J. Forn, for the petitioner. Martin A. Schainbaum, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioner's income tax in the amount of $2,118.56 for the year 1962. The questions presented for decision are (1) whether petitioner, during the year 1962, was domiciled in California so that one-half of his earnings might be attributed to his nonresident alien wife, and, if not (2) whether during that year he qualified for the head of household tax rates. Findings of Fact Some of the facts have been stipulated, and, as stipulated, are incorporated herein by reference. Petitioner filed a separate return for 1962 with the Office of International Operations, Washington, D.C. During that year he was married to Kiyo Pashby, a nonresident alien who was a citizen of Japan. She filed a 1962 return on Form 1040NB with the Office of International Operations, Washington, D.C., on which she reported one-half of petitioner's 1962 gross income. A refund of $976 was claimed on her return for one-half of the tax withheld during 1962, and that amount, plus interest of $9.11, was refunded to her as of August 21, 1963. *152 Petitioner was born in Los Angeles, California, on July 11, 1925. About 1932 or 1933 his parents separated and he went to live temporarily with his father's relatives in South Dakota. In 1940 petitioner returned to Los Angeles and attended Loyola High School until July 1942 when he enlisted in the United States Navy in Englewood, California. In 1942 his residence was at 11798 Kagel Canyon Street, San Fernando, California, and he maintained this home address while he was in the Navy. In July 1946 he was honorably discharged from the Navy at Terminal Island, California. From the time of his discharge in 1946, until he left to be married in Japan in 1953, he made his home at 11798 Kagel Canyon Street, San Fernando, California. The house at this address was owned by petitioner's grandfather until his death. Since 1953 it has been owned by his aunt, Ruth McDermot. A room in that house in which petitioner keeps various possessions is referred to by the family as "Bobby's room". He has a "sort of" understanding with his aunt that he may purchase the house when she no longer wants to live there. Petitioner voted in California in 1952. When he was discharged from the Navy in 1946, petitioner *153 decided to pursue a career in the Merchant Marine, attended the Merchant Marine officer's school in San Francisco for one month, and received a Third Officer's license. Between 1946 and 1953 he held several jobs in the Merchant Marine. He was unemployed ("on the beach") from time to time, and was once stranded in New York City as a result of a strike. He was able to obtain only menial jobs when he ventured into land-based occupations. During the years 1950-1953 his work at sea as an officer in the Merchant Marine was fairly steady, and he had meanwhile attained the rating of Second Officer. In 1953 petitioner went to Japan to get married. On April 29, 1953, he and Kiyo Pashby were married at the American Consulate in Yokohama, Japan. Although there was nothing to bar them from being married anywhere in Japan, they chose to be married at the American Consulate because they wanted to be married on American soil. The American Consulate is located within a United States Compound and is regarded as being on American soil. At the time of the marriage the Vice Consul who performed the ceremony explained to the couple, and they understood, that the laws of petitioner's home state, i.e., *154 California, particularly the Community property laws, would govern their rights in the event of any divorce or other situation in which their property interests might be called into question. When petitioner departed for Japan to get married, he left some clothes and other items that a seaman accumulates at the Kagel Canyon Street residence. His intention was to return with his wife to California and, after settling her there, to resume his "profession" in the Merchant Marine. After they were married his wife took a physical examination preparatory to getting a visa. She then discovered for the first time that she had a mild form of tuberculosis which barred her entry into the United States until it was cured, and this necessitated a change in petitioner's plans. Prior to leaving for Japan in 1953, petitioner took out a commercial interest visa which permitted him to engage in business in Japan. He then thought that his marriage and subsequent departure from Japan with his bride might entail time consuming red tape, and he wanted to be able to support himself in the meantime. For approximately two months after his arrival in Japan he engaged in the business of importing television *155 sets. When this business was terminated he went to sea on a ship owned by an American steamship company. That job lasted about until April or May 1954. By that time his wife had recovered from her illness and would have been able to get a visa, but it was not deemed advisable to leave Japan then because she had meanwhile become pregnant. Petitioner's first child, Kathleen, was born in Japan on June 22, 1954. He then decided to look around for something to keep him occupied until such time as his wife could travel, and he got a job with the Filtad Company, an American company, in Tokyo. This job lasted for about seven months. It was not a Merchant Marine job. Early in 1955 petitioner filed a United States income tax return in which he asked for a refund of taxes withheld on his salary because he had not been in the United States for 18 months. On February 3, 1955, petitioner entered into an agreement with the Department of the Navy Military Sea Transportation Service (hereinafter referred to as MSTS), Far East Branch, in which he accepted employment as a Merchant Marine Officer. The MSTS required petitioner to furnish a United States address, and the address given by him was 11798 *156 Kagel Canyon Street, San Fernando, California. The February 3, 1955 agreement provided, in part, that an employee of MSTS could, under certain described circumstances, terminate his assignment with any ship on which he had served on a voyage away from the "home port" for more than 12 months, and would be allowed wages, subsistence and transportation to his "home port" or "point of engagement." The term "home port" refers to the place where the company headquarters is located, which in this case was Yokohama, the headquarters of the Far East Branch of MSTS. The term "point of engagement" refers to the employee's home address which in this case was San Fernando, California. The February 3, 1955 agreement with MSTS was renewable year by year. In February 1956 petitioner felt that his daughter, Kathleen, was old enough to travel. At that time, however, the shipping situation was "so bad" that he feared he would be out of work about eight months if he had quit his job and an application made by him for leave was not approved until some months later. By that time, his wife was again pregnant with his second child, his daughter Gloria, who was born on October 11, 1957. Petitioner has *157 been employed as a Merchant Marine Officer by the Far East Branch of MSTS since February 3, 1955. He has always considered San Fernando, California, to be his home and his permanent address to be 11798 Kagel Canyon Street in that city. He gave that address as his "permanent address U.S.A." on his Federal income tax returns, and when he had his Second Officer license renewed in 1961. He has not filed any California income tax returns since 1953 because he received a letter from the California Franchise Tax Board that such returns were not required if he had not been in the United States during the calendar year. During the period 1953 to the present time, petitioner has been in the United States on two occasions. In 1956 he delivered a ship to California and, pursuant to orders from MSTS, returned to Japan by the first available transportation. In 1965, after the controversy concerning petitioner's domicile had arisen, petitioner and his family came to California. At the time of the trial (January 10, 1966) his wife and children had returned to Japan to enable the children to complete their schooling, and petitioner was under orders to report to the headquarters of the Far East Branch *158 of MSTS on January 15, 1966. In April 1965, petitioner voted in the Los Angeles municipal election. Petitioner has never owned any real property in Japan. When he and his wife were married in 1953, she owned a house. She sold that house and with the proceeds of the sale bought another house in 1956 at 216, 3-Chome, Naka Negishi, Isogo Ku, Yokohama, Japan. During the years petitioner has been employed by the Far East Branch of MSTS, from 1953 to the present time, his wife and children have lived in this house and this is the house to which petitioner returned to be with his family when his employment in MSTS permitted him to do so. The house was originally an old Japanese house, but the Pashbys altered it to an American style home. It has two bedrooms and is furnished. Its contents include a refrigerator and a television set. Since her marriage to petitioner in 1953, petitioner's wife has not been employed and has had no source of income other than amounts received from petitioner from his earnings. All the money used to maintain the household came from those earnings. Petitioner's two daughters were registered with the American Consul after they were born and they are American *159 citizens. They have an American passport to remain in Japan. At the present time they have a tourist visa from the Japanese government which is good for 180 days. Since reaching school age, they have attended an American Catholic school in Yokohama where only English is spoken and American textbooks are used. Petitioner chose this school for his daughters because it has the reputation of being the best school in Japan to prepare children for higher education in the United States. Petitioner's children speak, read and write English, and it is the principal language used by his family. They also speak, but do not read or write, French and Japanese. His wife speaks English, but petitioner does not speak Japanese, except for a few words, insufficient to carry on normal conversation. In 1962 petitioner was on a ship in Okinawa from January 1, to March 9; he made trips to the southeast Asia area on USNS Muskigum from March 12 to August 1, and he made trips from the port of Sasebo to Korean ports on a tanker from August 1 to the end of 1962. During 1962 he saw his wife and children when his ship was in the shipyard as Sasebo and they came to see him for two days, and on one or two other *160 occasions when his ship was loading in Yokohama. Sasebo is on the Island of Kyushu, whereas Yokohama is on the Island of Honshu. The total number of days he saw his wife and children during 1962 was about 25. He did not return to the United States during that year. In the separate Federal income tax return filed by petitioner for the year 1962 he reported gross income from wages received from MSTS of $13,712, one-half of which ($6,856) was treated as community income and included in his taxable income. The remaining one-half, as already noted, was reported in a separate return filed by petitioner's wife for 1962. In determining the deficiency respondent added $6,856 to the taxable net income reported in petitioner's return and gave the following reason for making this adjustment: Wages of $6,856.00, representing one-half of your total 1962 wages which you allocated as your wife's share of community income, are includable in your gross income because you have failed to establish that you were domiciled in a community property state at any time during 1962. Respondent also stated in the notice of deficiency that petitioner had not established that he was entitled to Head of Household *161 rates in the computation of his tax. When petitioner left the United States in 1953 for Japan, his domicile was in California. He then intended to return to California as his home, and that intention persisted throughout the year 1962. That intention was fixed and definite, although the time for return to California was not fixed, depending upon such factors as availability of comparable employment in the United States, schooling for his daughters, and transportation for his family on a space available basis at a time when he could obtain a leave of absence. California was his legal domicile throughout 1962. Opinion RAUM, Judge: Petitioner was clearly a resident of a foreign country during 1962, and but for the fact that he received his earnings from the United States or any agency thereof they would have been exempt from tax in their entirety. . Although recognizing that his foreign earnings are therefore not exempt, petitioner contends, nevertheless, that one-half of those earnings must be attributed to his wife by reason of the California community property laws, and that he is therefore chargeable only with the remaining one-half. *162 The Government agrees with his position if California were his domicile during the tax year. Cf. (C.A. 9), affirming ; . Accordingly, the only question before us in respect of this issue is whether California was petitioner's domicile during 1962. We hold that it was. At the outset, it is important to recognize the sharp distinction between "residence" and "domicile". These terms reflect entirely different concepts. Petitioner's residence during the tax year plainly was Japan; that is whether he in fact lived when he was not at sea. Domicile, on the other hand, embodies a legal concept that does not necessarily depend upon actual residence. California was petitioner's domicile of origin, and it was his domicile when he left the United States in 1953 to get married in Japan. So much is not disputed. And California would continue to be petitioner's domicile provided that he had a bona fide fixed intention to return, an animus revertendi. . Did petitioner have such intention, and did it persist during the *163 year 1962? The question is a factual one, and although there is evidence before us that would support a finding either way, we have concluded upon an evaluation of the entire record that petitioner did have the requisite intention. We think there can be little doubt that petitioner intended to return to California with his bride when he departed therefrom in 1953 in order to be married. But that aim was frustrated when a physical examination preparatory to obtaining a visa for his wife disclosed a mild case of tuberculosis that prevented her entry into the United States. Thereafter, even though she was cured, one circumstance after another, including two pregnancies, kept delaying the departure of the couple. Petitioner meanwhile became employed as a Second Officer of the Far East Branch of MSTS (a civilian arm of the American Navy), and would see his family only when on leave. When working in the United States he had been unemployed ("on the beach") from time to time, and his apprehension about being "on the beach" after giving up his employment to return to California delayed his departure still further. Moreover, were he to seek a transfer to the United States he feared a demotion *164 in his rating, which he felt would seriously jeopardize his career. Whether such fear was reasonable is not crucial, because we are satisfied from his testimony that such was in fact the state of his mind. Also, were he to attempt to bring his family to the United States during a period of annual leave, there was the problem of synchronizing such leave with a period when he could obtain transportation for his family on a space available basis - a practical difficulty that appeared to him during these years to be insurmountable. Nevertheless, his children were American citizens, being educated in an American school in Japan preparatory to entering some institution of higher learning in this country, and their presence in Japan was based upon American passports with tourist visas having a limit of only 180 days. While the matter may not be free from doubt, we think that petitioner's fixed intention to return to California persisted through the tax year 1962, and that only the time of such return was and is contingent today. To be sure, the record shows that petitioner today could probably obtain a transfer of his job to the Pacific Branch of MSTS, which has offices in San Francisco. *165 But the evidence shows that petitioner's present work in Southeast Asia entitles him to a 100 percent bonus in view of the military situation in that area, and it is entirely understandable that he would not wish to change his employment at this time. This, however, is not inconsistent with his intention to return at the appropriate time. We were impressed with his candor and truthfulness as a witness, and we conclude, in spite of various factors point in the other direction, that petitioner honestly had and continues to have a fixed intention to return to California, his domicile of origin, and that only the time of such return is contingent. Accordingly, California was his domicile in 1962, and its community property laws must be taken into account. , although superficially similar to the instant case, was decided upon an entirely different record, where there was doubt as to whether California was the departing American's domicile in the first place, where he never felt himself to be affiliated with any particular state of the United States, and where the Court was able to find that he preferred and intended to make Japan his home. *166 Since we decide the domicile issue in petitioner's favor we do not reach the Head of Household issue which he has conditionally abandoned if he should prevail on the other. Decision will be entered for the petitioner.